IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN PAUL RING,

          Petitioner,

vs.                                           No. CIV 06-545 MCA/LFG

ROBERT ULIBARRI, Warden,

          Respondent.

### MAGISTRATE JUDGE'S FINDINGS
### AND RECOMMENDED DISPOSITION[1]

#### Findings

1. This is a proceeding on a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, filed June 22, 2006. Petitioner John Paul Ring ("Ring") challenges the Judgment and Sentence entered on March 13, 2002 by the Fifth Judicial District Court in State v. Ring, No. CR-2001-279 (County of Chaves, New Mexico). Ring was convicted upon a jury verdict of First Degree Murder, Conspiracy to Commit Murder, and Tampering With Evidence. He was sentenced to a term of life imprisonment on the murder charge to run concurrently with the sentences on the other convictions.

2. Ring's motion for a new trial was denied on April 30, 2002. He appealed his conviction, and it was affirmed by the New Mexico Supreme Court on October 28, 2003. He then filed a petition for writ of habeas corpus in state court. An evidentiary hearing on the petition was

---

[1] Within ten (10) days after a party is served with a copy of these findings and recommendations, that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such findings and recommendations. A party must file any objections with the Clerk of the U.S. District Court within the ten-day period allowed if that party wants to have appellate review of the findings and recommendations. If no objections are filed, no appellate review will be allowed.

conducted on June 7, 2005.  On November 15, 2005, the state court filed its findings of fact and decision denying Ring's petition for habeas relief.  He then filed a petition for writ of certiorari, which was denied by the New Mexico Supreme Court on December 21, 2005.  This petition for federal habeas relief followed.

3.  Respondent[2] filed his Answer [Doc. 14], along with a Motion to Dismiss [Doc. 12] and Memorandum in Support on August 16, 2006.  In his Motion to Dismiss, Respondent  argues that the petition must be dismissed because some of Ring's claims are unexhausted and/or procedurally defaulted, and others were raised and decided in state court proceedings and Ring has not shown that these proceedings resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or were based on an unreasonable determination of the facts in light of the evidence presented, as required under 28 U.S.C. § 2254(d).

4.  Ring filed a Response to the Motion to Dismiss on August 31, 2006 [Doc. 17].  Respondent did not file a Reply, and the time for doing so has elapsed.  The Court finds that the Motion to Dismiss is fully briefed and ready for ruling.  Respondent's Motion to Expand the Record was granted on September 22, 2006 [Doc. 19], and the Court will consider the documents offered by Respondent in connection with that Motion in making this recommendation on the Motion to Dismiss.

Respondent's Presentation of the Claims in the Motion to Dismiss
Does Not Constitute Improper "Fragmentation"

5.  Petitioner alleges only a "Claim One" in his Petition, which he labels ineffective assistance of counsel.  This one claim includes several pages of detail explaining how, in his view, trial counsel

---

[2]The Court granted Respondents' Motion to Drop Patricia Madrid as a Named Respondent by Order dated August 31, 2006 [Doc. 18].  Warden Robert Ulibarri is the sole remaining Respondent.

provided unconstitutionally inadequate representation and setting forth specific instances of ineffectiveness.   Although not set out in a separate claim, Petitioner also alleges prosecutorial misconduct, asserting at the beginning of Claim One that "The state prosecutor knowingly used the perjured testimony of the two perpetrators of the murder to convict the Petitioner."  [Doc. 1, at 6].

6.   In the Motion to Dismiss, Respondent addresses separately each of Petitioner's specific assertions of ineffective assistance, as well as the prosecutorial misconduct claim, in arguing that the various claims were either unexhausted, procedurally defaulted, or properly addressed and denied by the state habeas court.   Petitioner contends that Respondent's attempt to "divide the ineffective assistance claim into numerous fragments" is unfair.   He argues, in effect, that the general claim of ineffective assistance of counsel which he raised in his state habeas petition suffices to exhaust his state court remedies as to all specific instances of ineffectiveness.

7.   The Court disagrees.

> Petitioners generally must exhaust available state court remedies before seeking redress via a federal habeas corpus petition . . . . Although petitioner raised an ineffective assistance of counsel claim on direct appeal, he based it on different reasons than those expressed in his habeas petition . . . .  Thus, petitioner has failed to exhaust his ineffective assistance of counsel claims.

Smallwood v. Gibson, 191 F.3d 1257, 1267 (10th Cir. 1999), citing Demarest v. Price, 130 F.3d 922 (10th Cir. 1997) for the proposition that claims will be considered unexhausted "when petitioner made general allegations of ineffective assistance of counsel in state court and more specific allegations in federal court on habeas."

8.   The crucial inquiry is whether the petitioner has "fairly presented" his claims to the state courts before bringing them to federal court.   Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509,

512 (1971).  It is the petitioner's burden to demonstrate that he has met this requirement.  <u>Miranda</u>

<u>v. Cooper</u>, 967 F.2d 392, 398 (10th Cir. 1992).

> "Fair presentation" of a prisoner's claim to the state courts means that
> the substance of the claim must be raised there.  The prisoner's
> allegations and supporting evidence must offer the state courts "a 'fair
> opportunity' to apply controlling legal principles to the facts bearing
> upon his constitutional claim.'"

<u>Demarest v. Price</u>, *supra*, at 932

9.  Based on this authority, the Court will examine separately each of Ring's alleged instances

of ineffective assistance of counsel, as well his allegation of prosecutorial misconduct, to determine

whether each claim was "fairly presented" to the state courts either on direct appeal or in the habeas

proceedings.  The delineation of claims set forth by Respondent in his Motion to Dismiss is generally

appropriate and the Court will use this format, with modifications as noted below, in considering the

claims of exhaustion, procedural default, and deference to state court determinations.

<u>Prosecutorial Misconduct</u>

10.  Ring contends that he is factually innocent of the crimes for which he was convicted.  He

alleges further that in order to convict him, the state prosecutor knowingly used the perjured

testimony of the two people who actually committed the murder.  Ring states that for many years the

victim John Rhodes sexually abused his own daughter, Crystal Rhodes Sullivan ("Sullivan"), and that

Sullivan and her boyfriend Anthony Vasquez ("Vasquez")[3] were the ones who murdered John

Rhodes, then pinned the crime on Ring.  Both Sullivan and Vasquez testified for the State at Ring's

trial.  [Petition, Doc. 1, at 6-6A].

11.  Sullivan is the daughter of the victim, John Rhodes and his wife, Judy Rhodes.  Judy

---

[3]Mr. Vasquez is variously referred to in the record as Antonio, Anthony, and Tony.

Rhodes is also Ring's mother; thus, Ring and Sullivan are half-siblings. [Doc. 14, Ex. I, at 2].

12. Ring filed a petition for habeas corpus in the state court on January 9, 2006 [Doc. 14, Ex. K]. In this state petition, Ring raised the claim that his conviction was obtained by the prosecutor's use of perjured testimony. He argued that the prosecutorial misconduct consisted in failing to revoke Vasquez's use immunity and allowing him to testify at trial after he admitting perjuring himself at the preliminary hearing on one particular issue. Ring also faulted the failure to prosecute Vasquez for perjury. On August 2, 2004, Ring filed a Supplement to his habeas petition, in which he again raised the issue of prosecutorial misconduct in that the prosecutor used Vasquez as a witness, knowing his testimony to be false. [Doc. 14, Ex. O].

13. In responding to Ring's state habeas petition and supplement, the State addressed what it saw as two separate allegations of prosecutorial misconduct involving the Vasquez testimony: use of perjured testimony, and the grant of use immunity. [Doc. 14, Ex. P]. The State argued in its Response that although the prosecution did call Vasquez as a witness at trial, it did not use the piece of information about which he admitted lying at the preliminary hearing. In addition, the fact that Vasquez did not tell the complete truth at the preliminary hearing was explored at trial, and the jury made the ultimate determination as to the truthfulness of the witness. With regard to the grant of use immunity, the State pointed out that the jury was informed about it, and defense counsel argued at trial that the jury should not accept the testimony of either Vasquez or Sullivan because they had been immunized. Again, the State argued, the jury was given all the facts and allowed to make its own judgment about credibility. Finally, the State pointed out that the issue of use immunity was raised in Ring's motion for a new trial [*see* Doc. 14, Ex. E] in the context of an allegation of denial of due process, and that motion was denied following a hearing.

14. The state habeas court rejected Ring's allegation of prosecutorial misconduct, noting that Ring could have raised this issue in his direct appeal but did not do so. [Doc. 14, Ex. R]. Following denial of his petition for habeas relief, Ring filed a petition for certiorari in the state supreme court. [Doc. 14, Ex. S]. Ring was represented by counsel in connection with the petition for certiorari. The only issue raised in that petition was the claim of ineffective assistance of counsel; the issue of alleged prosecutorial misconduct was not mentioned. The state supreme court denied certiorari on December 21, 2005 [Doc. 14, Ex. T].

15. Ring did not include the prosecutorial misconduct issue in his petition for certiorari, and the time for raising the issue has long since elapsed. NMRA, Rule 5-802(H). Ring has therefore procedurally defaulted this issue. Watson v. New Mexico, 45 F.3d 385, 387 (10th Cir. 1995) (a failure to seek timely state supreme court review of a denial of a state habeas petition constitutes procedural default for purposes of federal habeas review).

16. Federal courts generally do not review issues that have been defaulted in state court on an independent and adequate state procedural ground, unless the default is excused through a showing of cause and actual prejudice, or a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 750, 111 S. Ct. 2546, 2565 (1991); Jackson v. Shanks, 143 F.3d 1313, 1317 (10th Cir. 1998). In this case, the procedural ground was "independent and adequate," and Ring has not shown cause and prejudice nor a fundamental miscarriage of justice.

17. Ring has not alleged or established any cause for his failure to raise the issue of prosecutorial misconduct in the petition for certiorari. To establish "cause," the petitioner must show that some objective factor, external to the defense and not attributable to petitioner, impeded his compliance with state procedural rules. Ring has not alleged this. The Court notes that he was

6

represented by counsel in the petition for certiorari.

18.   In addition, he has not established a "fundamental miscarriage of justice" which would permit this Court to excuse his procedural default.  Such a situation occurs only in extraordinary circumstances where a constitutional violation has probably caused the conviction of one actually innocent of the crime.  McCleskey v. Zant, 499 U.S. 467, 494, 111 S. Ct. 1454, 1470 (1991).  Proof of actual innocence requires more than a mere assertion; rather, "petitioner must present evidence of innocence so strong that a court cannot have any confidence in the outcome of the trial . . . . Substantial claims that errors of constitutional dimension have caused the conviction of an innocent person are 'extremely rare.'"   Sellers v. Ward, 135 F.3d 1333, 1338 (10th Cir. 1998).

19.   Ring states in his petition that he is innocent of the crime for which he was convicted, and that his conviction was brought about in part because the prosecutor knowingly used the testimony of a witness or witnesses whose testimony was untrustworthy and, in fact, untrue.  Ring's assertion of innocence basically comes down to his unsupported claim that he did not commit the murder, that Vasquez and Sullivan did the deed and then lied about it, and that the prosecutor knew they were lying but used their testimony anyway.

20.   The jury heard Vasquez and Sullivan testify and made its determination as to credibility. There is nothing on the record to support a conclusion that no reasonable jury would have believed these two witnesses.  The state habeas court made clear in its findings of fact that both of these witnesses were cross-examined by the defense as to inconsistencies in their testimony and possible motives for murdering the victim.  Defense counsel presented the theory in opening statement, during cross-examination, and in summation, that Vasquez and Sullivan were the actual culprits and were unworthy of belief.  The jury certainly had a basis for questioning their credibility but chose to credit

at least some of their testimony, as it concluded that Ring was guilty of the murder.  He has presented nothing to show that the jury acted unreasonably, nor anything to substantiate his claim of actual innocence apart from his own assertions.  The Court finds he has not met the high bar of showing actual innocence which would excuse a procedural default.

21.  Finally, although he doesn't state so explicitly, Ring may be alluding to the prosecutorial misconduct issue in his Response to the Motion to Dismiss, where he asserts that New Mexico courts do not "strictly and regularly" follow the rule that failure to raise a claim on direct appeal bars petitioner from later raising that claim in a habeas petition.  This argument arises form the fact, as noted above, that the state habeas court did not address the merits of Ring's prosecutorial misconduct claim, but rather rejected it on grounds the claim had not been raised on appeal.

22.  Ring is correct in his statement that a state procedural ground is not "adequate and independent" for purposes of the procedural default rule unless it is "firmly established and regularly followed," James v. Kentucky, 466 U.S. 341, 348, 104 S. Ct. 1830, 1835 (1984), and is applied "evenhandedly to all similar claims" Maes v. Thomas, 46 F.3d 979, 986 (10th Cir. 1995).  However, the cases cited by Ring – i.e., Swafford v. State, 112 N.M. 3, 810 P.2d 1223 (1991); and State v. Gillihan, 86 N.M. 439, 524 P.2d 1335 (1974) – do not support his assertion that New Mexico courts do not evenhandedly apply the no-appeal, no-habeas rule.  This very argument was considered by the Tenth Circuit, which examined the same cases cited by Ring and rejected the assertion:

> Our review of New Mexico cases indicates that New Mexico courts have consistently and even handedly applied the rule waiving issues not raised on direct appeal for purposes of post-conviction relief . . . .  The fact that New Mexico provides exceptions to this general rule does not indicate that New Mexico courts "have unfettered discretion" to consider the type of claims that Mr. Jackson has not raised on direct appeal, and the cases Mr. Jackson cites [including

Swafford and Gillihan] do not indicate otherwise.

Jackson v. Shanks, *supra*, at 1318.

23.  In any event, it is not Ring's failure to include the prosecutorial misconduct issue in the direct appeal of his conviction, but rather the fact that he raised it in his state habeas petition but then failed to mention it in his petition for certiorari after his request for state habeas relief was rejected, which provides the ground for procedural default.  Watson v. New Mexico, *supra.*  The Court finds that Ring procedurally defaulted his claim of prosecutorial misconduct, and there are no grounds to excuse the default.

### Ineffective Assistance of Counsel

24.  To establish ineffectiveness of counsel, Ring must make a two-pronged showing:  (1) that counsel's performance was constitutionally deficient, and (2) that the deficient performance prejudiced the defense in that counsel's errors were so serious as to deprive him of a fair trial with a reliable result.  Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

25.  To prove deficient performance, Ring must overcome the presumption that counsel's conduct falls within the wide range of reasonable professional assistance that might be considered sound trial strategy.  Duvall v. Reynolds, 139 F.3d 768, 777 (10th Cir. 1998).  Scrutiny of counsel's performance must be "highly deferential" and must avoid the distorting effects of hindsight.  Miles v. Dorsey, 61 F.3d 1459, 1474 (10th Cir. 1995).  In order to be found constitutionally ineffective, trial counsel's performance must have been completely unreasonable, not merely wrong, so that it bears no relationship to a possible defense strategy.  Hoxsie v. Kerby, 108 F.3d 1239, 1246 (10th Cir. 1997).

A.      _General Allegation of Failure to Investigate_

26.  At one point in his federal petition, Ring alleges generally that his trial counsel failed "to investigate the facts of the crime and the facts of the defense."  He follows this with a lengthy list of several specific ways in which the attorneys failed to investigate, at some points combining these alleged failures to investigate with other complaints against counsel.

27.  Respondent, in his  "sub-claim B," addresses this passing reference to a "failure to investigate" and deals with it as a separate claim, noting that "[t]his is a general allegation, and might be considered a sort of umbrella allegation that includes other, more specific allegations found in succeeding paragraphs.  This memorandum will address the allegation at its level of generality, and then address other, more specific allegations below in the order in which they are made." Respondent argues that this general allegation was decided adversely to Ring by the state habeas court, in various findings of fact following the evidentiary hearing, and that this Court should defer to those rulings.  Respondent thereafter addresses the remaining, more specific claims which he labels Sub-Claims C to J.

28.  The Court finds it more appropriate to address the specific instances of ineffectiveness delineated by Ring, many of which constitute particular examples of the alleged failure to investigate, rather than addressing the general "umbrella" allegation as a separate claim.

B.      _Failure to Interview Judy Rhodes and Call Her as a Witness_

29.  As noted above, Judy Rhodes is Ring's mother.  The State's theory of the case at Ring's trial was that he and his mother conspired to murder John Rhodes, Judy's husband and Ring's stepfather, and that Judy Rhodes paid Ring money to accomplish that purpose.  Ring asserts that his trial counsel never spoke to Judy Rhodes, even though she took and passed a polygraph test in which

10

she denied these allegations.  Ring says he instructed his attorneys to call her as a witness, but they refused to follow his instructions.  Respondent contends that this issue was raised and decided by the state court which considered Ring's petition for habeas corpus, and that decision is entitled to deference under 28 U.S.C. § 2254(d).

30.  A federal court is precluded from granting habeas relief on any claim adjudicated on the merits by the state courts, unless the state proceeding resulted in a decision that was contrary to or involved unreasonable application of clearly established federal law; this means that the state court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law.  Alternatively, the state court decision must be rejected if it was based on an unreasonable determination of the facts in light of the evidence presented – that is, if the state court confronted a set of facts materially indistinguishable from a decision of the Supreme Court and nevertheless arrived at a different result.  28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 406, 413, 120 S. Ct. 1495 (2000); Smallwood v. Gibson, supra, at 1264-65.

31.  A federal court may not issue a habeas writ "simply because we conclude in our 'independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004).  "Federal habeas courts do not sit to correct errors of fact or to relitigate state court trials.  Our jurisdiction is limited to ensuring that individuals are not imprisoned in violation of the Constitution."  Thompson v. Oklahoma, 202 F.3d 283 (Table, text in Westlaw), No. 98-7158, 2000 WL 14404, at *6 (10th Cir. Jan. 10, 2000); Scrivner v. Tansy, 68 F.3d 1234, 1238 (10th Cir. 1995).

32.  The issue of ineffective assistance was raised, in general, in Ring's direct appeal.  Joseph

D. Talley ("Talley"), of the Hobbs or Roswell office[4] of the Public Defender, was Ring's lead trial attorney.  He filed the Notice of Appeal following Ring's conviction and later the Statement of Issues on appeal.  [Doc. 14, Exs. C, E].  Talley raised the issue of ineffectiveness of counsel in the Statement of Issues, and it was discussed in length in Ring's brief in chief on appeal, which was prepared and filed by different counsel.  [Doc. 14, Ex. G].

33.   The State Supreme Court noted in its opinion affirming the conviction that although Defendant raised ineffective assistance of counsel, he did not point to any specific acts to demonstrate counsel's failings but rather argued that ineffectiveness should be presumed, relying on a case which the state supreme court found to be inapposite.  The court found that any ineffectiveness arguments would be best presented in a habeas corpus petition.  [Doc. 14, Ex. I].

34.   Ring then filed his state habeas petition, alleging numerous instances of ineffectiveness. As one specific alleged instance, Ring noted that his attorneys did not call Judy Rhodes, Ring's alleged co-conspirator, to testify at the trial even though she took and passed a polygraph test during which she stated that she did not shoot John Rhodes, did not take part in the shooting, and did not know the identity of the person(s) responsible for the shooting.  Ring argued that if his mother, Judy Rhodes, had been allowed to testify, this "would have proved there was no conspiracy."

35.   As noted above, the state habeas judge conducted an evidentiary hearing on the allegations of ineffective assistance.  Judy Rhodes testified at the evidentiary hearing, and the judge stated in his Decision and Order Denying Petitioner's Petition for Writ of Habeas Corpus [Doc. 14, Ex. R] that he also reviewed the entire trial transcript. Both sides were given the opportunity to submit proposed Findings of Fact and Conclusions of Law, although neither side did so.

---

[4]Different office addresses are given for Talley at different places in the record.

36. In his decision denying Ring's habeas request, the state court judge set forth at length the appropriate standard for determining ineffectiveness based on Strickland v. Washington, *supra*, and other pertinent authority. He made findings of fact to the effect that Ring's trial counsel never interviewed Judy Rhodes about the case. The judge noted that Judy Rhodes took and passed the polygraph test, as Ring stated in his petition, but that she did not testify at trial. In addition he found that Judy Rhodes was not charged with any criminal involvement in the shooting until the day Ring's trial began. He found further that Judy Rhodes pled no contest to conspiracy charges arising from the murder of John Rhodes and was serving her sentence. [Doc. 14, Ex. R].

37. After hearing the evidence and reviewing the trial transcript, the state habeas judge did not make a specific finding as to the allegation of ineffectiveness in failing to interview or call Judy Rhodes; however, he concluded generally as follows:

> The evidence presented shows that Talley and Lautenschlager [Ring's trial counsel] prepared for trial and consulted with Petitioner for trial preparation. The evidence shows Talley had prepared for trial and he presented a plausible defense theory to the jury. This was the same theory Petitioner expresses. Talley was well acquainted with the facts, he adequately cross-examined the States [sic] witnesses, established inconsistencies in their testimony, and attacked and highlighted issues going to their credibility.

[Doc. 14, Ex. R, at 15-16]. The judge concluded that Ring's Sixth Amendment right to effective assistance of counsel was not violated because trial counsel provided reasonably effective representation, and that even if errors were made, Ring failed to show prejudice "because it is not reasonably probable that but for counsel's alleged errors the result of the trial would have been different." [Id., at 16]. Ring was convicted of both murder and conspiracy to murder. Thus, the state habeas judge reached the implicit conclusion that even if counsel had called Judy Rhodes as a

witness, the jury would still have found that Ring conspired with her in the murder.

38.   The state court's findings of fact to the effect that counsel were well prepared for trial, in spite of Ring's allegations that they failed to interview or call his mother as a witness, are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  Ring does not meet this burden.

39.   The Court granted Respondent's request to expand the record to include documents related to Judy Rhodes' criminal conviction for conspiracy to murder John Rhodes.  [Docs. 15, 19]. Respondent argues that Judy Rhodes's no contest plea to the charge of conspiracy to commit first degree murder constitutes an admission that she was guilty of conspiring with Ring in the plot to murder John Rhodes.  Respondent contends further that her willingness to admit her guilt justifies the decision by Ring's defense counsel not to call her as a witness, as a rational attorney could well have concluded that her testimony would not advance Ring's defense.

40.   New Mexico law is not entirely clear as to the effect of a no contest plea nor as to the uses to which such a plea may be put.  Respondent contends that, "by pleading no contest to the charge of conspiracy to commit first degree murder, Ms. Rhodes admitted that she was guilty of conspiring with Petitioner," citing Thomas v. Kerby, 44 F.3d 884, 888 n.4 (10th Cir. 1995), and that the decision not to call her as a witness was sound because "[u]nless she committed perjury, she would have provided devastating direct evidence of Petitioner's guilt."  [Doc. 13, at 7].  Ring, on the other hand, argues that "[i]n New Mexico a no contest plea allows a defendant to maintain her innocence . . . .  After what happened to her innocent son, Judy knew that with her incompetent public defender she would never get a fair trial.  Judy, to this day, maintains her actual innocence." [Doc. 17, at 4].

14

41. The case cited by Respondent, <u>Thomas v. Kerby</u>, stands for the proposition that "For purposes of the case in which it is entered, a nolo plea in New Mexico amounts to a confession of guilt." <u>Id.</u>, at 888 n.4. It is, at least, an acknowledgment by the defendant that the prosecution could present evidence beyond a reasonable doubt on each essential element of the crime and that a jury could find guilt based on that evidence.

42. It is less clear, however, what the effect of a *nolo* plea is on other litigation. In <u>State v. Baca</u>, 101 N.M. 415, 419, 683 P.2d 970, 972 (Ct. App. 1984), the Court of Appeals held that the State may not simply offer a nolo contendere plea as the sole ground for establishing a basis to revoke defendant's probation, noting:

> It is difficult to describe the exact parameters of the nolo contendere plea. In <u>State v. Raburn</u>, 76 N.M. 681, 417 P.2d 813 (1966), the supreme court said: "We need not determine whether the plea of nolo contendere is the full equivalent of a plea of guilty, or an implied confession of guilt. The plea is at least a statement that the defendant will not contest the charge" . . . . "The Fifth Circuit provided a definition of the term . . . : Nolo contendere means 'I do not contest it.' It is, to be sure, a tacit confession of guilt, but solely for the purpose of the case in which it is entered" . . . . We agree and hold . . . that a plea of nolo contendere is not the full equivalent of a plea of guilty, but does amount to a confession of guilt solely for the purposes of the case in which it is entered.

43. Furthermore, while the New Mexico Court of Appeals once stated that "[a] plea of nolo contendere accepted and recorded in open court is tantamount to an admission of guilt," <u>State v. Marquez</u>, 105 N.M. 269, 271, 731 P.2d 965, 967 (Ct. App. 1986), it also pointed out, citing NMRA5-304(G), that the court accepting a no-contest plea need not inquire into the factual basis for the plea, as it must in the case of a plea of guilty or guilty but mentally ill. <u>State v. Vincent</u>, 137 N.M. 462, 475-76, 112 P.3d 1119, 1132-33 (Ct. App. 2005), *cert. granted*, 137 N.M. 523, 113 P.3d 346

15

(2005).  Thus, a defendant need not implicate himself or herself with a factual recitation of what he/she did, but must acknowledge that the prosecutor could present competent and admissible evidence, beyond a reasonable doubt, on each element of the crime.

44.  Based on this somewhat conflicting authority, the Court need not accept Respondent's inference that Judy Rhodes's no contest plea constitutes irrefutable evidence that she conspired with Ring to murder John Rhodes and that she would have had to perjure herself if called to the stand in his defense.  However, it is likely that such would be the effect of her testimony.  There is nothing on the record to substantiate Ring's statement that "Judy, to this day, maintains her actual innocence."  Ring did not supply any affidavit from his mother, or any other evidence that her plea lacked a factual basis, and indeed, she has been convicted of the offense to which she pled.

45.  The Court finds Respondent's argument, that it was eminently reasonable for Ring's attorney to decline to interview or to call Judy Rhodes as a witness at trial, entirely reasonable.  Although Judy Rhodes wasn't charged until the day of Ring's trial, her attorneys, assuming she had any in the weeks or months prior to his trial, would not have allowed her in all likelihood to even talk to Ring's lawyers.  And his attorneys would have been acting unethically if they attempted to contact her directly.  The record does not reveal whether in fact Judy Rhodes was or was not represented at the time of Ring's trial, nor whether Ring's attorneys ever attempted to contact her.[5]        4 6 .  However,  Respondent also argues that the fact that Judy Rhodes was facing criminal charges at the time of Ring's trial means that her Fifth Amendment right against self-incrimination could have been compromised if she made statements to Ring's attorneys.  Such a conversation might well be

---

[5]Ring's lead counsel, Joseph Talley, could not be located and did not testify at the evidentiary hearing on Ring's state habeas petition.

considered an admission.  More likely is the scenario that she would simply have refused to talk to Ring's attorneys, even if they did contact her, and would likely have invoked her rights under the Fifth Amendment if called to testify at Ring's trial.

47.  Under these circumstances, it is apparent that trial counsel's decision not to interview Judy Rhodes or call her as a witness was a reasonable trial strategy, and that these actions did not fall below the standards of reasonably competent attorneys.  Ring has thus failed to establish the first prong of the <u>Strickland</u> test in connection with this allegation and has failed to show that the state court's general findings of constitutional effectiveness, in the face of Ring's allegations about failure to call Judy Rhodes, were incorrect and unreasonable.  There are no grounds for federal habeas relief as to this claim.

C.     *Failure to Investigate and Other Allegations of Ineffectiveness in Connection with the Testimony of Crystal Rhodes Sullivan*

48.  Ring next claims that his trial attorneys were ineffective in the manner in which they investigated and handled the Sullivan testimony.  He alleges:

> Trial counsels did not interview or speak with Crystal Rhodes Sullivan.  Contrary to instructions from the Petitioner, trial counsels did not investigate the years of sexual abuse of Crystal by the victim John Rhodes.  During the police investigations Crystal provided numerous different statements.  Trial counsels did not obtain nor review these conflicting statements.  Contrary to Petitioner's instructions trial counsels did not use these statements to challenge Crystal's credibility.

[Doc. 1, at 6B].  Ring also asserts that he wrote numerous letters from jail to his trial attorneys, alerting them to the history of sexual abuse of Crystal Sullivan by her father.  [Doc. 1, at 6D].

49.  Respondent contends that Ring never raised this claim in state court and that it is therefore unexhausted and, because the claim is now procedurally barred in state court, the claim has

been procedurally defaulted for purposes of federal habeas corpus.  <u>Jackson v Shanks</u>, *supra*; <u>Coleman v. Thompson</u>, *supra*. In the alternative, Respondent argues that to the extent this claim was not procedurally defaulted, the state habeas court made findings of fact which contradict Ring's allegations, findings which are entitled to deference in this Court.

50.   As noted above, the ineffective assistance of counsel claims were considered in connection with Ring's state habeas petition, not on his direct appeal.  In his state habeas petition, Ring alleged ineffective assistance of counsel in that his "Defense attorney put up no defense at all." He elaborates on this allegation in a lengthy attachment to the petition, in which he makes reference to his attorneys' handling of certain aspects of Sullivan's testimony.

51.  Ring alleges that his attorneys failed to use the testimony of Bobby Vaughn, who would have said that Sullivan made statements such as "God, I want to kill him," referring to her father; that the attorneys further failed to use the testimony of Jamie Christensen Warford, who would have said that Sullivan showed her a gun about three days before the shooting and told Warford this was the gun they were going to use to kill her dad; and further that they failed to use the testimony of Detective Sharon Berry to refute false testimony given by Sullivan to the effect that Ring kept his foot over a .22 casing to cover it while the detective was interviewing them, whereas Berry would have testified that she never interviewed Ring.  In addition, Ring argued generally in his state petition that his attorneys did not try to impeach witnesses, including Sullivan.

52.  It is apparent that at least some of the allegations raised in Ring's federal petition under this claim were "fairly presented" to the state habeas court, as they were the subject of factual findings made by the judge.  In his decision denying habeas relief, the judge summarized Ring's testimony at the evidentiary hearing, noting that he charged his attorneys with ineffectiveness on numerous

grounds, including the fact that prior to trial he had to outline for his attorneys certain inconsistencies in witnesses' testimony; that he gave a list of witnesses to his lawyers but they failed to interview those witnesses; and that defense counsel did not recall Jamie Christensen Warford who would have stated she saw Sullivan and Vasquez with a gun one week before the shooting. [Doc. 14, Ex. R, at 10-11]. The judge made the following findings of fact:

> 24. Lautenschlager [one of Ring's two trial attorneys] testified that Talley [the other attorney] was prepared for trial and Talley had notes or points to make at trial and with witnesses. His trial notebook also had notes on issues to stay away from.

> 25. The defense theory of the case was that Petitioner's stepsister, Crystal Sullivan, set up Petitioner for conviction with the help of Anthony Vasquez. Both Sullivan and Vasquez were granted used [sic] immunity and Petitioner contends that fact makes their credibility suspect.

> 26. Talley cross-examined these two witnesses on inconsistencies in their stories including how the gun was disposed of.

> 27. Talley cross-examined both Crystal and Sullivan and Anthony Vasquez in detail. He took notes during the trial to determine if more inconsistencies in their testimony could be presented.
>
> \*\*\*
>
> 33. The transcript of the trial proceeding revealed that:

>> a. Talley in his opening statement attacked the credibility of the two important witnesses for the state; Crystal Sullivan and Anthony Vasquez;
>>
>> \*\*\*
>>
>> e. Talley, on cross examination of Jamie Michelle Warford established that Petitioner was not present when Crystal Sullivan and Anthony Vasquez Jr. were discussing that a small black gun was going to be used to kill John Rhodes;

>> f. Talley cross-examined Crystal Sullivan and established inconsistencies in her testimony, that she was molested by the victim when she was young, that

the victim abused her stepmother and the [sic] she had made a statement at a very young age that she wished the victim was dead.

\*\*\*

i.  In his closing argument, Talley argued there was no physical or money trail to Defendant.  He argued a money trail to Crystal Sullivan was established.  He argued based on Jamie Michelle Warford's testimony that Crystal Sullivan and Anthony Vasquez Jr. were present with a gun and they were going to use it to kill John Rhodes.  He argued their potential motives.  He argued they were liars and that his client was not guilty.

34.  The evidence presented shows that Talley and Lautenschlager prepared for trial and consulted with Petitioner for trial preparation.  The evidence shows Talley had prepared for trial and he presented a plausible defense theory to the jury.  This was the same theory Petitioner expresses.  Talley was well acquainted with the facts, he adequately cross-examined the States [sic] witnesses, established inconsistencies in their testimony, and attacked and highlighted issues going to their credibility.

[Doc. 14, Ex. R, at 13-16].

53.  The judge concluded that Ring's right to effective assistance of counsel was not violated, "because trial counsel provided reasonably effective representation," and that if errors were made, "it is not reasonably probable that but for counsel's alleged errors the result of the trial would have been different."  [Id., at 16].

54.  Thus, it is apparent that the state habeas court was "fairly presented" with the following allegations raised in Ring's federal petition:  that counsel failed to investigate or use allegations that the victim sexually abused Sullivan and that this provided a motive for her to conspire to murder him, and that Sullivan provided inconsistent statements to police which Ring's counsel failed to use for impeachment.  These allegations were considered, and decided adversely to Ring, by the state habeas

20

court following an extensive evidentiary hearing.

55.   Allegations that defense counsel conducted an inept cross-examination of Sullivan were raised in Ring's petition for certiorari to the state supreme court, and that court denied the petition.

56.   The state court's findings of fact to the effect that counsel were well prepared for trial and did a competent job of cross-examining Sullivan, attempting to impeach her, and presenting to the jury the theory that she had a motive for killing John Rhodes and conspired with Vasquez to do so,  are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1). Ring's conclusory allegations do not meet this high burden.

57.   Regarding the Sullivan issues, Ring's only allegation which was not touched on by the state habeas judge in his opinion was the allegation that Ring's attorneys did not interview Sullivan. There is no indication that Ring raised this issue at all in the state habeas proceedings.  This claim is therefore procedurally defaulted.

58.   Although it is not clearly presented. Ring appears to be making the claim that any procedural default should be excused because the State "deliberately suppressed" information as to the whereabouts of Joseph Talley, lead counsel at Ring's trial, and thus prevented Talley from testifying at the evidentiary hearing on Ring's habeas petition.  [Doc. 17, at 4].  It is true that Talley could not be located at the time of the evidentiary hearing, almost three and a half years after the trial, and that he did not testify at that hearing.  However, co-counsel Lautenschlager did testify and gave evidence as to Talley's preparation and performance.  [Doc. 14, Ex. S. at 3-4].

59.  To the extent Ring raises the "deliberate suppression" allegation in an attempt to establish cause for his procedural default, the Court rejects that argument.  Ring was advised at the evidentiary hearing that Talley could not be located, and the court offered him a continuance so that further

efforts could be made to locate Talley.  Ring declined the offer.  The state habeas judge noted that "Petitioner stated on the record his desire to proceed and not have a continuance.  The Court proceeded to hear evidence and argument on the issues of ineffective assistance of counsel."  [Doc. 14, Ex. S, at 3-4].

60.  In addition, Ring offers no proof of his assertion that Talley's location was "deliberately" suppressed.  He points to a statement made in a footnote in Respondent's briefing on this Motion to the effect that, in the course of preparing this Motion to Dismiss, counsel performed an internet Google search on the name "Joseph Talley" – apparently for the purpose of showing how difficult or easy it would be to find him – and located a reference to someone by that name working as a web designer in Albuquerque.  [*See*, Doc. 13, at 5 n.3].  There is no indication that the website designer and the attorney are one and the same person, and the Court does not find this information material to any issue in this petition.  It certainly does not prove that the State knew where attorney Talley was at the time of the evidentiary hearing in June 2005 but kept that information from the habeas court and from Ring.

61.  In sum, all of the issues concerning counsel's handling of the Sullivan testimony were either procedurally defaulted or were raised and properly decided by the state courts.  No adequate excuse has been proffered for the procedural default.  The Court finds no ground for federal habeas relief on this claim.

D.  *Failure to Investigate and Properly Cross-Examine Anthony Vasquez*

62.  Ring faults his attorneys for failure to "interview or speak with or investigate Anthony Vasquez."  He says they never read the numerous conflicting statements made by Vasquez, and that Ring himself compared Vasquez's varying statements and provided his attorneys with "a line by line

22

comparison of the perjury" and instructed them to use the line-by-line comparison in cross examining Vasquez, but they declined or failed to do so.

63.   Respondent contends that this claim is procedurally defaulted, because Ring did not raise it in state court.  Alternatively, he argues that to the extent this claim was not procedurally defaulted, the state habeas court made findings of fact which contradict Ring's allegations, and those findings are entitled to deference in this Court.

64.   Ring did not raise the issue of failure to interview Vasquez in the state habeas petition, and that portion of this claim is therefore procedurally defaulted.  It appears that he did raise the issue that his attorneys did not properly cross-examine Vasquez at trial.  He alleged in his state habeas petition that defense counsel did not attempt to impeach Vasquez; never argued that Vasquez's statement that he kept a gun under the spare tire in the trunk of his car was unworthy of belief because Vasquez owned a pickup truck at the time of the murder; and did not argue certain inconsistencies with respect to Vasquez's testimony concerning the whereabouts of the gun after the murder.

65.   The state habeas judge summarized Ring's testimony at the evidentiary hearing, noting that he made allegations regarding failure to refute Vasquez's testimony and failure to "go line by line or statute by statute to show lies."  [Doc. 14, Ex. R].  It is unclear whether this last allegation refers to the cross-examination of Vasquez, or some other witness, or whether it was simply a general allegation criticizing counsel's cross-examination technique.

66.   Following the hearing, the judge made findings of fact to the effect that Ring's defense counsel presented the theory at trial that Vasquez and Sullivan were the actual killers and that their testimony was suspect because they had been granted use immunity; that lead attorney Talley was

prepared for trial; that Talley cross-examined Vasquez "on inconsistencies in their stories including how the gun was disposed of"; that, in general, counsel cross-examined both Sullivan and Vasquez in detail and took notes to determine if more inconsistencies in their testimony could be presented; and that Talley attacked Vasquez's credibility in his opening statement, in cross-examination, and in closing argument.  [Id., at 12-16].

67.   In particular, the judge found that "Talley cross-examined Anthony Vasquez Jr. and established that he was a convicted felon, that Vasquez had numerous inconsistent stories regarding the purchase, sale and disposal of the gun, and other inconsistencies regarding events of the day the shooting occurred"; and that "Lautenschlager cross-examined [Detective] Simmons and reinforced the testimony that Vasquez had numerous stories about the disposal of the gun."  [Id., at 15].

68.   The judge further found that, in general, counsel were prepared for trial and consulted with Ring with respect to trial preparation.  The Court further found that defense counsel presented a plausible defense theory to the jury, the very theory that Ring now asserts was overlooked or mishandled.  He found further that Talley was well acquainted with the facts, adequately cross-examined prosecution witnesses, establishing inconsistencies in their testimony and attacking and highlighting issues going to their credibility.  [Id., at 15-16].

69.   Ring's petition for writ of certiorari following the denial of his state habeas petition included the claims that Talley, his lead trial attorney, inadequately cross-examined Vasquez in part because he "never went through a line-by-line effective cross examination of the witnesses [sic] inconsistent statements." [Doc. 15, Ex. S, at 5].  The appellate public defender who prepared the cert petition criticized Talley's cross-examination technique in colorfully derogatory and unnecessarily personal language, arguing that Talley did not make effective use of Vasquez's prior inconsistent

statements to police.  The state supreme court was presented with these arguments but denied the petition for certiorari.

70.  The Court finds that Ring's allegations regarding counsel's failure to adequately cross-examine Vasquez at trial were "fairly presented" and decided in a legally correct and reasonable manner in the state habeas proceedings.  Ring makes only conclusory allegations attacking these findings and has not met his burden of rebutting by clear and convincing evidence the statutory presumption that the findings are correct.  28 U.S.C. § 2254(e)(1).  There are no grounds for federal habeas relief with respect to this claim.

E.   *Failure to Review and Use a Police Report for Impeachment*

71.  Ring next contends that his attorneys failed to review the police reports, and this failure led them to overlook an important piece of impeaching evidence.  He alleges:

> Trial counsels did not review the police reports for the case.  An example of this was shown in Crystal's testimony.  Crystal stated that she saw a bullet casing on the driveway when Crystal and the Petitioner were speaking to the police.  A review of detective Sharon Berry's report proves the Petitioner was not present during that interview.  The Petitioner told trial counsels of this perjury and requested that detective Berry be recalled as a witness to testify that the Petitioner was not present during that interview.

[Doc. 1, at 6B-6C].

72.  Respondent addressed this allegation by dividing it into two separate claims, but the Court finds it more appropriate to deal with the allegation as a single claim.  Respondent argues that the general claim of failure to review police reports, and the specific allegation regarding a conflict between Detective Sharon Berry's and Sullivan's versions of a particular event, were procedurally defaulted.

73.  In his state habeas petition, Ring alleged as follows:

> [Counsel] did not re-call Detective Sharon Berry to refute false testimony given by Chrystal Sullivan.  Chrystal Sullivan stated while Sharon Berry was interviewing Chrystal and I, that I stepped on a .22 casing to cover it from the detectives [sic] view.  Detective Berry was willing to retestify, that she never interviewed me at any point in the investigation.  Which would have proved that Chrystal Sullivan perjured herself to make me look guilty.

[Doc. 14, Ex. K].

74.  The Court finds that, while not identical the allegations in the federal and state petitions are sufficiently similar to justify the conclusion that the claim was "fairly presented" to the state court in Ring's habeas petition.  This allegation was not raised at all, however, in his petition for certiorari to the state supreme court.  It was therefore procedurally defaulted.  <u>Watson v. New Mexico</u>, *supra*.

F.    *Failure to Investigate Alibi Defense*

75.  Ring next contends that he notified his attorneys that he had an alibi defense, but they failed to investigate it or use it at trial.  He does not elaborate as to what the alibi evidence would have been, nor does he give the names of any witnesses who would have supported his alibi claim.

76.  In his state habeas petition, Ring did not cite the failure to investigate an alibi defense as one of the instances of claimed ineffectiveness.  The closest he gets to mentioning an alibi is his assertion in the state petition that, "Defense attorneys advised me not to testify the day of trial, when they knew I was going to testify that I was babysitting for Chrystal so that her and Anthony Vasquez could go to the bar the night of the murder.  Mr. Talley stated that we already had the case beat and I didn't need to testify."  [Doc. 14, Ex. K].  The Court notes that this allegation is directly contrary to the finding of fact by the state habeas court that, "At the end of the State's case, Defense counsel encouraged Defendant to take the stand to maintain his innocence.  Defendant declined to testify.

He was not discouraged to testify by his lawyers." [Doc. 14, Ex. R, at 14].

77.   The allegation concerning Ring's failure to testify in his own defense is not sufficiently similar to the alibi claim raised in the federal petition to support a conclusion that Ring "fairly presented" to the state courts the claim that his attorneys failed to investigate an alibi defense which would have turned the tide at trial.   In addition, there is no indication in the state habeas judge's opinion that Ring ever raised the alibi issue at the evidentiary hearing; the numerous instances of ineffective assistance cited by Ring in his testimony, as set forth in the opinion denying habeas relief, do not include this claim.   [Doc. 14, Ex. R, at 2, 10-11].   While the opinion does discuss the fact that Ring did not take the stand at his trial, it does not make any mention of any claim that Ring's attorneys failed to investigate or present an alibi defense.   Ring's petition for certiorari does not raise the issue.

78.   The Court finds that Ring has procedurally defaulted the claim of ineffectiveness of counsel in failing to investigate an alibi defense.

G.      *Failure to Investigate Police and Prosecutorial Misconduct*

79.   In this claim, Ring alleges:

> Contrary to the Petitioner's instructions, trial counsels failed [to] investigate the police and prosecutorial misconduct and perjury.   Trial counsels did not interview the first two police detectives.   These detectives believed that Anthony Vasquez committed the murder. Trial counsels did not investigate police detective RB Simms.   The Petitioner alerted trial counsels to the acts of Simms that constituted the suborning of perjury.   This was in the transcripts of Simms' interviews with Anthony Vasquez.

[Doc. 1, at 6D].

80.   The first issue raised in Ring's state habeas petition was the claim that his conviction was

obtained by the use of coerced testimony, based on the manner in which "Detective R. B. Simms" (*i.e.*, Simmons)[6] questioned Vasquez.   Ring sets forth quotations, apparently from a 15-page statement which Vasquez made to police officials, purporting to state verbatim what Simmons said to Vasquez and vice versa.   However, Ring does not cite as an instance of ineffective assistance his counsel's failure to interview other detectives or to investigate Detective Simmons, aside from the allegation of ineffectiveness in that his attorneys "[d]id not bring up the coercion of the witness by investigating officers."  [Doc. 14, Ex. K].

81.   The state habeas judge's opinion does not refer to any alleged failure to investigate police officers or to interview two detectives who, Ring contends, concluded that Vasquez rather than Ring committed the murder.   [Doc. 14, Ex. R, at 10-11].   The issues raised in this claim were not mentioned in Ring's petition for certiorari.   [Doc. 14, Ex. S].   The claim has therefore been procedurally defaulted in state court, precluding federal habeas relief as to this set of allegations.

H.     *Failure to Read the Complete Discovery File*

82.   Ring's final contention is that his trial counsel "did not even read the complete discovery file provided by the state."  [Doc. 1, at 6D].   Respondent contends that this claim is procedurally defaulted.

83.   There is no allegation anywhere in Ring's state habeas petition concerning a failure to read all of the State's discovery file.   The state habeas judge does not mention such a failing as one of the instances of ineffectiveness cited by Ring in his testimony at the evidentiary hearing and makes no ruling on it.   The claim is likewise absent from the petition for certiorari.

84.   The Court agrees with Respondent that the claim has been procedurally defaulted.   Even

---

[6]The record indicates that this detective is actually named "Simmons," rather than Simms.

if this were not the case, Ring fails to rebut the presumption that the state court was correct in its finding that Ring's attorneys were prepared for trial.

## Conclusion

Each of the claims presented by Ring in his federal petition for habeas relief has been either procedurally defaulted on adequate and independent state grounds with no showing of any excuse for the procedural default; or else raised and decided adversely to Ring in the state courts with no showing that the state court decisions were contrary to clearly established federal law or were otherwise unreasonable.

## Recommended Disposition

That Ring's Petition be denied and this case be dismissed with prejudice.

_Lorenzo F. Garcia_
Lorenzo F. Garcia
Chief United States Magistrate Judge